IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROOSEVELT M. WILLIAMS,

                Plaintiff,

v.

JUDY SMITH, JEFFREY L. FREUNA,
CAREY A. HALVERSON, CHRISTOPHER
MUSHA, KEITH E. POND, RUSSELL J.
POTRATZ, ERIC D. SCHROEDER, JAMES A.
ZANON AND SANDY HABECK,

                Defendants.

OPINION & ORDER

14-cv-789-jdp

---

      Plaintiff Roosevelt M. Williams, a prisoner in the custody of the Wisconsin Department of Corrections at the Columbia Correctional Institution, has filed a complaint alleging that he was served a meal containing particles from his food tray that made him seriously ill. Plaintiff has also filed a motion for appointment of counsel and a letter regarding payment of his filing fee and danger he faces from other prisoners at CCI. He seeks leave to proceed with his case *in forma pauperis*, and he has already made an initial partial payment of the filing fee previously determined by the court.

      The next step is for the court to screen the complaint and dismiss any portions that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or ask for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. In screening any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

      After considering plaintiff's allegations, I will dismiss plaintiff's complaint for failure to comply with Federal Rule of Procedure 8, but I will give him an opportunity to submit an

amended complaint that more clearly explains the basis for his claims. Also, I will deny plaintiff's motion for appointment of counsel without prejudice to his refiling it at a later date, and address plaintiff's concerns about his filing fee and the danger he faces from other prisoners.

## ALLEGATIONS OF FACT

Plaintiff Roosevelt Williams is an inmate at the Columbia Correctional Institution. On November 12, 2013, while plaintiff was in his segregation cell, he inadvertently swallowed "particles" or "shavings" from the tray on which his food was served; plaintiff says that the particles or shavings "were hidden within [his] food." Plaintiff struggled to breathe for about one minute. Plaintiff pushed the emergency call button in his cell. When prison staff (whom I understand to be nurses and correctional officers) arrived, plaintiff was "restrained." As defendant Nurse Carey Halverson watched, plaintiff "regurgitate[d] . . . 'tray matter.'"

On November 15, 2013, plaintiff started having frequent watery bowel movements "with blood spots and tray matter blend[ed]." Months later, plaintiff continued to have diarrhea with blood and "tray matter."

## ANALYSIS

I understand plaintiff to be bringing a claim under the Eighth Amendment, which prohibits cruel and unusual punishment, for being served food containing hidden "tray particles" that seem to have made him (and continue to make him) quite ill. The court takes

plaintiff's allegations seriously, but at this point he has not provided enough information to support an Eighth Amendment claim.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8(d), "each allegation must be simple, concise, and direct." The primary purpose of these rules is fair notice. A complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merchant Serv's, Inc.*, 20 F.3d 771, 775 (7th Cir. 1994). In addition, allegations of "[n]egligence or even gross negligence" are not enough to support an Eighth Amendment claim. *Adams v. Durai*, 153 F. App'x 972, 975 (7th Cir. 2005). What is needed are allegations showing that individual defendants were responsible for "blatantly inappropriate treatment or intentional mistreatment." *Id*. Because constitutional claims under 42 U.S.C. § 1983 must be based on a defendant's personal involvement in the constitutional violation, *see Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), each individual defendant plaintiff wishes to sue in these actions must be able to understand what he or she is alleged to have done to violate plaintiff's rights.

Plaintiff's allegations fall short of these standards. For instance, plaintiff states that tray particles were "hidden" in his food, but he does not explain whether this was an unforeseeable accident, or whether a prison staff member intentionally hid them or was aware of the danger yet recklessly failed to ensure the food's safety. Nor does he explain whether he believes that the medical treatment he received after the incident violated his Eighth Amendment rights. Plaintiff names a series of prison officials as defendants, but generally fails to explain what role any of them had in the incident or the following medical treatment.

3

The only defendant named in the allegations, Nurse Halverson, was present when plaintiff began vomiting, but he does not suggest that there was anything she failed to do that could have helped him at that point.

Because plaintiff's complaint does not comply with Rule 8, I will dismiss it in its entirety. However, I will give plaintiff a chance to file an amended complaint in which he more fully explains what each of the named defendants specifically did to violate his rights. He should draft his amended complaint as if he were telling a story to people who know nothing about his situation. Plaintiff should simply state (1) what acts he believes violated his rights; (2) what rights were violated; (3) the specific person who committed those acts; and (4) what relief he wants the court to provide. Plaintiff should make sure to explain why he believes that individual defendants acted intentionally to harm him or were aware of potential harm to him yet failed to protect him from that harm.

Plaintiff has also filed a series of motions for appointment of counsel. Dkt. 5, 8, 9. The term "appoint" is a misnomer, as I do not have the authority to appoint counsel to represent a pro se plaintiff in this type of a case; I can only recruit counsel who may be willing to serve in that capacity. To show that it is appropriate for the court to recruit counsel, plaintiff must first show that he has made reasonable efforts to locate an attorney on his own. *See Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992) ("the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). To meet this threshold requirement, this court generally requires plaintiffs to submit correspondence from at least three attorneys to whom they have written and who have refused to take the case. Plaintiff has provided several such letters.

Second, this court will seek to recruit counsel for a pro se litigant only when the litigant demonstrates that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). I have not yet allowed plaintiff to proceed with any claims, which usually means that it is too early in the case to tell whether counsel is needed. Plaintiff argues that the case is too complex for him to handle, and he has included test results that appear to show he has grade-school level reading and language abilities. But based on plaintiff's submissions so far, which are relatively well-written and easy to understand, I conclude that the assistance of counsel is not necessary for plaintiff to accomplish the task at hand: submitting a complaint explaining in greater detail how each defendant violated his rights. Plaintiff states that he no longer has the assistance of his jailhouse lawyer, but I do not see a large-enough difference between his earlier and more recently submitted documents to suggest that plaintiff is incapable of amending his complaint.

Further, even if plaintiff submits an amended complaint that states claims that can be heard in this court, the case has not passed the relatively early stage in which a defendant may file a motion for summary judgment based on exhaustion of administrative remedies, which often ends up in dismissal of cases such as plaintiff's before they advance deep into the discovery stage of the litigation. Should the case pass the exhaustion stage and plaintiff believes that he is unable to litigate the suit himself, he may renew his motion.

Plaintiff raises two other issues in a letter to the court. First, plaintiff asks the court for a memorandum telling prison officials to deduct only 20% of his income to for monthly payments toward the remainder of his filing fee in this case, as set out in 28 U.S.C.

5

§ 1915(b)(2). Plaintiff states that the prison business office has instead earmarked 100% of his income for this purpose. Plaintiff seems to think this because a notation in his trust fund account statement states "100" in the "percent" column of that document. Dkt. 17-1. It is unlikely that this notation means what plaintiff thinks it does. More likely it means that plaintiff is responsible for paying off 100% of this debt.

But in any case, this court previously denied a similar motion filed by plaintiff because no money had actually been taken from his account to make monthly payments. Dkt. 16. Plaintiff's most recent financial information, Dkt. 17-1, shows the same thing: the business office has not deducted *any* money from his account for monthly payments. Nonetheless, I will grant plaintiff's motion, at least in one respect. I note that it is the court's practice to send the warden a letter stating the business office's responsibility to follow § 1915(b)(2), but that no such letter appears on the docket in this case. I will direct the clerk of court to send that letter to the CCI warden.

Also, plaintiff asks whether he "could be permitted to go to a federal holding facility, or county jail until all court case(s) are resolve[d]." Dkt. 17, at 3. Plaintiff also says that he has made protective confinement requests and requests to be separated from other inmates. I do not understand this to be a formal motion, but instead a request for information. At any rate, the answer is that the court would not order the transfer of a prisoner to any other facility during the pendency of a lawsuit unless it granted a motion for preliminary injunctive relief, and even that type of relief is available in only the most extreme circumstances, where it was proven that a prisoner is in grave danger. Even aside from the fact that plaintiff has not yet been allowed to proceed on any claims in this case, he does not come anywhere close to making that showing. It also seems that the danger plaintiff mentions is simply not part of

6

this case, which has to do with his tainted meal and subsequent medical care. If plaintiff is concerned about danger from other prisoners, he should continue to alert prison officials to that fact, and if necessary, file a brand new lawsuit about that danger.

ORDER

IT IS ORDERED that:

1. Plaintiff Roosevelt Williams's complaint is DISMISSED for failure to comply with Federal Rule of Civil Procedure 8. Plaintiff may have until July 28, 2015, to submit an amended complaint addressing the problems detailed in the opinion above. Should plaintiff fail to submit an amended complaint by this deadline, I will direct the clerk of court to enter judgment dismissing the case.

2. Plaintiff's motions for appointment of counsel, Dkt. 5, 8, 9, are DENIED without prejudice to plaintiff renewing his motion later in the proceedings.

3. Plaintiff's motion to submit a letter to the CCI business office, Dkt. 17, is GRANTED. The clerk of court is directed to send a letter to the CCI warden explaining the business office's responsibilities under 28 U.S.C. § 1915(b)(2).

Entered July 6, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge