```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF WISCONSIN
```

ROOSEVELT M. WILLIAMS,

                Plaintiff,

    v.

JUDY SMITH, JEFFREY L. FREUNA,
CAREY A. HALVERSON, CHRISTOPHER MUSHA,
KEITH E. POND, RUSSELL J. POTRATZ,
ERIC D. SCHROEDER, JAMES A. ZANON,
SANDY HABECK, and DESIGN SPECIALTIES, INC.,

                Defendants.

                                                        ORDER

                                                      14-cv-789-jdp

Plaintiff Roosevelt M. Williams, a prisoner at the Columbia Correctional Institution, is proceeding on Eighth Amendment and state-law claims that defendant prison officials allowed him to eat a meal off of a food tray that was damaged, resulting in him ingesting particles from the tray and becoming seriously ill. He is also proceeding on a state-law products liability claim against defendant Design Specialties, Inc. Williams has filed several motions regarding discovery, and he also seeks an extension or stay of his deadline to respond to Design Specialties' motion for summary judgment.

First, Williams has filed two motions for sanctions against non-defendant prison officials for failing to timely provide him with materials he requested. Dkt. 59 and Dkt. 85. In his first motion, he says that officials dawdled in allowing him access to review his medical records. The parties' submissions appear to show that Williams first requested to review his records in mid-March 2017, but the parties dispute whether he was able to view his records on

April 20. In any event, defendants argue that delays were caused by Williams's movement between segregation and general population, his unavailability for a scheduled review session, and his failure to explain that a review should be expedited because he had court deadlines to meet.

By the time of Williams's reply brief, he admits that he was allowed to view his records on June 15, but I take him to be saying that this review session was unreasonably late to meet a June 16 court deadline. It is unclear what he means by this—the only deadline set for this day was the original objections-to-motions-in-limine deadline, which was pushed back after I allowed him to add Design Specialties as a defendant. Perhaps he means a deadline to respond to defendants' discovery requests, but there has been no follow-up motion to compel filed by defendants, and I would not grant such a motion given the circumstances.

Presumably because Williams was in fact allowed to review his records, he shifts the focus of his reply brief to prison officials' failure to allow him to use a legal loan to make copies of certain medical records needed to respond to Design Specialties' discovery requests. He followed up with a second motion for sanctions in which he explains this denial further. Defendants state that prison policy requires a prisoner to justify his loan request by including documentation showing what the copies are needed for. They state that Williams's early requests did not include this justification but that in late July he submitted a proper request, and that the state would approve his loan request. In his reply, Williams says that the delay was the product of retribution by prison officials for him filing lawsuits against prison employees.

I will deny both motions for sanctions. Williams indeed received access to his materials in June and copies of the materials in August, so he does not appear to have been prejudiced

by the delays, even if they were the result of malicious behavior on the part of the non-defendants he discusses. There is no need to consider forcing non-defendants to give Williams materials they have already turned over. Williams seeks monetary sanctions as well, but the non-defendants have not violated a court order, and his claims of retaliation do not belong in this lawsuit. So there is no reason to consider the relatively drastic step of imposing a fine on a non-party.

Williams raises a more serious problem with his ability to litigate this action in a motion to extend his deadline to respond to Design Specialties' motion for summary judgment. Dkt. 73. In that motion he states that prison staff confiscated his legal materials from his jailhouse lawyer, Oscar McMillian, and he seeks a temporary restraining order forcing CCI staff to return him his materials. I would not consider doing so without hearing from the state, so his motion is denied as far as a request for a TRO is concerned.

Williams's motion in part focuses on the process McMillian received in disciplinary proceedings after being charged with violating prison rules on the amount of legal materials allowed in his cell. But McMillian's concerns about due process in his disciplinary proceedings belong in a separate lawsuit.

Nonetheless, Williams has a right to access the courts, and he will not realistically be able to do so without his legal materials. In their response, defendants say that they do not know whether the documents that have been seized from McMillian include Williams's documents, but—contrary to Williams's assertion that the documents would be destroyed—those documents are in storage, and "[i]f Williams would like to determine the status of the documents seized from McMillian and request any of his own legal documents, he should contact Housing Unit Manager Fink." Dkt. 79, at 2. I take this to mean that the state would

return Williams's documents to him if he asked. But in a document he calls a supplement to his reply,[1] Williams states that he has already been in contact with Fink. He submits an interview request form addressed to the warden complaining about his materials being confiscated and stating that his litigation was "interrupted" by it. Dkt. 83-1, at 3. Fink responded for the warden, stating that McMillian was given a conduct report for possessing excessive legal materials, and that inmates are required to share materials between themselves through the U.S. Mail, rather than internal prison routing. *Id*. Although Williams did not explicitly ask Fink for the materials in his interview request form, it was clearly implied, and he has reiterated that desire through his motion here. The state seems to agree that it would return the materials to Williams if he asked, and at this point, I consider him to have done so. The parties should be able to resolve this issue without further court intervention. I will give the state a short period of time to work with Williams to comply with his request, or show cause why I should not issue an injunction ordering the return of those documents.

Williams has filed a motion to compel Design Specialties to produce previous complaints about "delamination" of the types of food trays at issue here, any lawsuits filed about the trays being defective, and "product design safety consult approval review" records. Dkt. 67. He also wants Design Specialties to pay a $350 sanction for withholding this information. Design Specialties responded to Williams's request by stating that it did not manufacture the trays (its position at summary judgment is that it merely sold the trays and that Williams failed to sue the correct defendant for the products liability claim, a company

---

[1] Williams also filed a document captioned as his reply, stating that pages were missing from his copy of the state defendants' response to his motion. Dkt. 83. If defendants have not already sent Williams a complete copy, they should do so immediately.

named Rogers Manufacturing), that it simply is unaware of other lawsuits regarding the trays, and that it does not have the documents he seeks.

Williams is entitled to discover documents in Design Specialties' "possession, custody, or control." Fed R. Civ. P. 34(a)(1). Between his motion to compel and his motions for an extension or stay of his summary judgment response deadline, Dkt. 73 and Dkt. 92, Williams theorizes that Design Specialties "controls" this information and should be able to obtain it because it is a subsidiary of Rogers Manufacturing. It is possible that a close relationship between Rogers and Design Specialties could lead to Design Specialties having control over information in Rogers's possession. *See Wachovia Sec., LLC v. Loop Corp.*, No. 05-cv-3788, 2008 WL 2625907, at *2 (N.D. Ill. June 27, 2008) ("A party's control over documents in the possession of a corporate affiliate 'rests on a determination of whether the defendant has practical and actual managerial control over, or shares such control with, its affiliate, regardless of the formalities of corporate organization.'" (quoting *Westinghouse Elec. Corp. v. Rio Algom Ltd.*, 480 F.Supp. 1138, 1145 (N.D. Ill. 1979)). Williams says that he needs more time to conduct discovery into this relationship. There is already evidence suggesting that the two entities are closely linked. A Rogers "Product Evaluation Form" regarding the trays includes a notation "Bus Div: Design Sp," which Williams takes to mean that Design Specialties is a division of Rogers. Dkt. 54-2. An email from the president of Design Specialties to the state asks pointed questions about how the DOC handles trays, stating that "*Our* factory has information about your order and checking to see the batch of material and the operator who ran the order." Dkt. 54-3 (emphasis added). I also note that Design Specialties' website states that it "is a *manufacturer* of reusable plastic tableware items such as flatware, tumblers compartment trays and dishes." Design Specialties, Inc., *Products*, www.designspecialties.org/products.html

(emphasis added). None of this decisively shows that Design Specialties is in control of the types of information Williams seeks, so I will deny his motion to compel for now. But he is still free to file new discovery requests aimed at understanding this issue. From the discovery documents Williams has placed on the docket, it looks like he has already made those requests. If it turns out that Design Specialties' prior discovery responses were made in bad faith, Roosevelt can seek an appropriate remedy.

The precise nature of the relationship between Design Specialties and Rogers may also affect whether Williams can meet specific elements of the Wisconsin product liability statute. Wis. Stat. § 895.047 (stating elements for claims against either manufacturer or distributor). I will grant Williams's motion for an extension of time to file his response for two reasons: he would benefit from the return of his legal documents, and it is appropriate to give him more time to conduct discovery about the Design Specialties-Rogers relationship.

ORDER

IT IS ORDERED that:

1. Plaintiff Roosevelt Williams's motions for sanctions, Dkt. 59 and Dkt. 85, are DENIED.

2. The state may have until September 8, 2017, to report back about whether it has returned plaintiff's legal documents to him or show cause why I should not issue an injunction ordering them to return the documents.

3. Plaintiff's motion for temporary restraining order, Dkt. 73, is DENIED.

4. Plaintiff's motion to compel discovery from defendant Design Specialties, Inc., Dkt. 67, is DENIED.

5. Plaintiff's motion for an extension of time to file a response to Design Specialties' motion for summary judgment, Dkt. 73, is GRANTED. Plaintiff may have until September 29, 2017, to submit his summary judgment response. Design Specialties may have until October 9, 2017, to file its reply.

6. Plaintiff's motion for a stay of his summary judgment response deadline, Dkt. 92, is DENIED as duplicative.

Entered August 25, 2017.

                                          BY THE COURT:

                                          /s/
                                          _____
                                          JAMES D. PETERSON
                                          District Judge