IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROOSEVELT M. WILLIAMS,

                Plaintiff,

  v.

CHRISTOPHER MUSHA, KEITH E. POND,
RUSSELL J. POTRATZ, ERIC D. SCHROEDER,
JAMES A. ZANON, SANDY HABECK,
and DESIGN SPECIALTIES, INC.,

                Defendants.

OPINION AND ORDER

14-cv-789-jdp

---

Plaintiff Roosevelt M. Williams is proceeding on Eighth Amendment and state law claims that prison officials at Oshkosh Correctional Institution allowed him to eat a meal from a food tray that was damaged, resulting in him ingesting plastic from the tray and becoming seriously ill. He is also proceeding on a state-law products liability claim against defendant Design Specialties, Inc.

Before the court is a motion for summary judgment filed by the state-employee defendants, Dkt. 104, and two motions for summary judgment filed by Design Specialties, Dkt. 55 and Dkt. 101. Also before the court are Williams's renewed motions for assistance in recruiting counsel, Dkt. 164 and Dkt. 170, and a motion for issuance of a subpoena, Dkt. 181. For the reasons below, I am granting defendants' motions for summary judgment and am denying all of Williams's motions.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials and are undisputed unless otherwise noted.

At all times relevant to this case, Williams was confined at Oshkosh Correctional Institution. All the individual defendants worked at Oshkosh during the relevant time period: Sandy Habeck was a food service administrator; Christopher Musha and Eric Schroeder were correctional sergeants; James Zanon was a captain; and Russell Potratz and Keith Pond were correctional officers. Williams has also named Design Specialties, Inc., the vendor that sold food trays to the Wisconsin Department of Corrections in 2012 and 2013.

In late October 2013, Habeck became aware that the coating was peeling from many the trays used to serve meals to inmates in segregation. Habeck reported the problem to Oshkosh's business office. Because the trays were only one year old, Habeck believed it was possible there was a defect in the manufacturing of the trays. She directed food services staff to count how many of the trays needed to be replaced. Zanon also became aware of the problem and inspected some of the peeling trays. Zanon did not think the plastic was a choking hazard because the plastic coating was peeling off in small, thin pieces and had to be pulled or scraped to be detached from the tray. On November 12, 2013, Colleen Janikowski, the financial program supervisor, contacted Design Specialties about the peeling trays. On November 13, Design Specialties agreed to replace 140 trays. Design Specialties shipped out the replacement trays within a week.

Meanwhile, also on November 12, 2013, Williams swallowed plastic peelings from the food tray on which his meal had been served to him in his segregation cell. Williams says that he began having difficulty breathing immediately. He pushed his emergency call button and security staff approached his cell. Shortly thereafter, staff reported to Captain Zanon that Williams appeared to be having a seizure and was not responding to staff.

2

Defendants Zanon, Potratz, Pond, Musha, and Correctional Officer Aaron Karn approached Williams's cell. Williams was lying on the floor of his cell on a pillow, was breathing somewhat rapidly and rhythmically, as if panting, and appeared to be shaking slightly. Zanon saw a small amount of spittle under Williams's head. Zanon approached Williams and began patting his shoulder and back, telling him that there were staff members in the room and that no one was going to hurt him. Zanon was concerned that if Williams was having a seizure, he could be disoriented and combative as he regained consciousness. Williams opened his eyes and pointed to his throat but did not say anything. Zanon asked Williams if he was choking, and Williams pantomimed back blows with his right hand. Zanon and Musha slapped Williams's back, and Williams coughed and spit some liquid out of his mouth. Zanon again asked Williams whether he was choking. Williams nodded that he was, but Zanon could see that he was breathing.

Two nurses, Carey Halverson and Kimberly Haase, arrived at the cell. By this time, Williams appeared to be alert and was able to speak. Williams told Halverson that he had "tray" in his throat. Staff members did not see anything in Williams's mouth, but he had plastic in his hands that appeared to be a piece of his tray. After checking Williams' vital signs, staff took Williams to the health services unit by wheelchair. Williams made sounds as though he was clearing his throat and then stated, "I swallowed it." Nursing staff assessed Williams and told him that if he had swallowed plastic, it would pass and would be in his feces. Williams was then transported back to his cell.

Later that same day, Williams reported that he was having severe abdominal pain. He was seen by a nurse in the health services unit, who noted that there were no objective findings that would explain Williams's pain. On November 14, Williams was again seen in the health

services unit with complaints of diarrhea that he believed was caused by the plastic he had ingested. A nurse assessed Williams, noted that he was not in any distress, and directed him to drink water. Williams continued to complain of severe abdominal pain and, on November 17, he was sent to Mercy Medical Center Emergency Room and a CT scan was performed. The scan did not show any obstruction or bowel perforation. Williams was diagnosed with a viral syndrome. (The record does not contain any evidence regarding complaints Williams made or health care he received for abdominal pain or diarrhea from November 17, 2013 to January 12, 2014.)

On January 12, 2014, Williams submitted a health service request complaining about abdominal pain and diarrhea. A prison physician prescribed anti-diarrhea medicine and ordered several tests. The test results were normal. Williams has not complained to health services staff about diarrhea or abdominal pain since July 2014. In December 2014, Williams had a colonoscopy at UW Hospital. Two polyps were found and removed, but the results were otherwise normal. The prison physician prescribed probiotics to Williams.

Defendants are not aware of any other inmate reporting that he ingested plastic or became sick from the peeling trays.

ANALYSIS

Williams is proceeding on claims that (1) defendants Musha, Pond, Potratz, Schroeder, Zanon, and Habeck violated his rights under the Eighth Amendment and state negligence law by failing to protect him from ingesting plastic; and (2) defendant Design Specialties, Inc. is liable for providing a defective product. I address each claim below.

## A. Claims against state defendants

The Eighth Amendment imposes a duty on prison officials to provide human conditions of confinement and to take reasonable measures to guarantee an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official's "deliberate indifference" to a "substantial risk of serious harm" violates the Eighth Amendment. *Id.* at 828. To survive summary judgment, Williams must present evidence suggesting that he faced a substantial risk of serious harm, and that defendants knew about the risk of harm but disregarded it. *Id.* at 834. *See also Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008).

Williams has failed to submit evidence suggesting that he faced a substantial risk of serious harm from the peeling trays. It is undisputed that the plastic coating was peeling from the meal trays used to serve food to prisoners in the segregation unit. But defendants presented evidence that the coating was peeling in small pieces and that someone would have to pull or scrape the plastic to detach it from the tray. Williams has presented no evidence to contradict this besides stating that the plastic from his tray and became mixed in with his food. But even accepting Williams's version of events as true, he has not shown that there was a *substantial* risk that a significant amount of the peeling would become detached, that it would become mixed in with food on the tray, and that an inmate would unknowingly ingest it.

Williams also has presented no evidence that ingesting a piece of plastic coating from his tray presented a substantial risk of serious harm to his health or safety. He has no admissible evidence to support his theory that the plastic he says he swallowed caused him any serious gastrointestinal problems. None of Williams's medical records indicates that his ingestion of plastic caused significant, or any, medical problems. And although Williams insists that he suffered abdominal pain and diarrhea for months because he ingested the plastic, he does not

5

have the medical expertise necessary to make this assertion. Therefore, even if a jury believed Williams's allegation that he ingested plastic that had peeled from his tray, no reasonable jury could conclude that the peeling trays presented a substantial risk of serious harm to Williams's health or safety.

Williams has not shown that any of the defendants were deliberately indifferent to any risk of harm posed by the trays. "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Rice ex rel. Rice v. Corrections Medical Services*, 675 F.3d 650, 665 (7th Cir. 2012). "[D]eliberate indifference requires that the corrections officer must have *actual* knowledge of the risk." *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) (emphasis in original). It is not enough to show that defendants *should* have known about a substantial risk of serious harm. *See Grieveson*, 538 F.3d at 775.

There is no evidence in the record suggesting that defendants Pond, Potratz, Schroeder, or Musha were even aware of the peeling trays. These defendants were not present during the delivery of lunch trays to Williams on November 12 and they were not involved in daily food preparation. Therefore, these defendants cannot be liable for any harm caused by the peeling trays. *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (to be liable under § 1983, defendant must have been "personally responsible" for constitution deprivation). Defendant Zanon knew about the peeling trays, but he did not think the trays presented a safety risk. He also knew that food services staff was aware of the trays and was working on a solution to replace the trays. In his role as a security captain, Zanon was entitled to rely on food services to address the problem. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's

6

job."). This leaves defendant Habeck in food services. But the evidence shows that Habeck took reasonable measures to address the problem with the trays as soon as she became aware of it. She determined how many trays were affected and contacted her supervisor. Her action resulted in the institution quickly ordering new trays.

Williams contends that because it was obvious that the trays were peeling, defendants must have known that the trays presented safety risks. He also argues that the defendants in supervisory positions, such as Habeck and Zanon, should have stopped using the trays. He points out that the prison had Styrofoam trays that could have been used. But even if Williams had proven that defendants could have stopped using the trays, nothing in the record suggests that defendants thought that the trays created a substantial risk of serious harm. There is no evidence, for example, that defendants thought the plastic could detach and end up in the prisoners' food, that other prisoners had complained about ingesting plastic, or that defendants thought ingesting small pieces of plastic coating could cause health problems. *See Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (to survive summary judgment on failure to protect claim, prisoner must present evidence that defendant "actually knew" that the challenged condition "created a substantial risk of harm"). In sum, no reasonable jury could conclude from this record that defendants were deliberately indifferent to Williams's health or safety. Accordingly, the state defendants are entitled to summary judgment on Williams's Eighth Amendment claim.

Defendants are also entitled to summary judgment on Williams's state law negligence claim. To prevail on a claim for negligence in Wisconsin, Williams must prove that defendants breached their duty of care and that he suffered injury as a result. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. Williams's negligence claims fail, not only

7

because the evidence of record does not suggest that defendants breached a duty of care, but also because Williams did not submit a notice of claim as required by Wis. Stat. § 893.82. Compliance with this statute is a jurisdictional prerequisite to proceeding with a state law claim against any non-physician state official. *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Section 893.82 is jurisdictional and *strict* compliance is required.") (emphasis in original). Because the undisputed facts show that Williams failed to file a notice of claim relating to his complaints about the peeling tray, the state defendants are entitled to summary judgment on his state-law negligence claims.

**B. Product liability claim against Design Specialties, Inc.**

Williams is also proceeding on product liability claims against Design Specialties, Inc., based on the theory that Design Specialties manufactured defective trays that peeled and caused harm to Williams. In its motions for summary judgment, Design Specialties argues that Williams's claim against them fails because they did not manufacture the trays that were purchased by the DOC and Williams cannot show that they should be liable as the seller under Wisconsin's product liability statute, Wis. Stat. § 895.047. In the alternative, Design Specialties contends that Williams cannot prove that any defect in the manufacture of the trays rendered the trays to be "unreasonable dangerous" or caused him any injury.

I am granting Design Specialties' motion. Design Specialties has submitted undisputed evidence that the trays were manufactured by Rogers Manufacturing, a company that is separate and distinct from Design Specialties. Design Specialties acted only as a seller and distributor of the trays. Under Wisconsin law, a seller or distributor of a defective product can be held strictly liable only if the plaintiff proves "by a preponderance of the evidence" that one of the following conditions applies:

(1) the seller contractually assumed the manufacturer's duties to manufacture, design, or provide warnings or instructions on the product;

(2) the manufacturer and its insurer cannot be sued in Wisconsin; or

(3) the plaintiff could not enforce a judgment against the manufacturer or its insurer. Wis. Stat. § 895.047(2).

Despite being given multiple opportunities to do so, Williams has submitted no evidence to prove that any of the above conditions applies in this case. Therefore, Williams has not shown that Design Specialties can be liable as a seller or distributor of the trays.

Williams also has failed to submit evidence showing that the trays had a defective condition that "rendered the product unreasonable dangerous to persons or property" or that the defective condition caused Williams alleged injuries, as required to succeed on product liability claim based on strict liability. *Id.* § 895.047(1) (listing elements required to prove strict product liability). As discussed in the context of Williams's Eighth Amendment claim above, Williams has not shown that plastic peeling from the trays was "unreasonably dangerous" or that the plastic caused the medical problems he says that he suffered later. For all of these reasons, Design Specialties is entitled to summary judgment on Williams's product liability claim.

**C. Williams's motions for a subpoena and for assistance in recruiting counsel**

Finally, I note that in the past month Williams has filed two renewed motions for court assistance in recruiting counsel, Dkt. 164 and Dkt. 170, and a motion for issuance of a subpoena to Rogers Manufacturing, Dkt. 181. These motions will be denied. In determining whether to recruit counsel for Williams, the relevant question is whether the complexity of the case exceeds his ability to litigate it. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). In this

9

instance, I am not persuaded that Williams needed counsel to litigate his claims against the state defendants. His claims against the prison officials were not complex. Regardless whether he had counsel, his claims against the state defendants would have failed because, as discussed above, the evidence shows that defendants were not deliberately indifferent to any substantial risk of serious harm to Williams.

Williams's product liability claim against Design Specialties were significantly more complex than his Eighth Amendment and negligence claims. But Williams had multiple opportunities to seek discovery and amend his complaint to name the proper defendant. He failed to do so, but I am not persuaded that Williams needed the assistance of counsel to take these steps. For similar reasons, Williams's request for a subpoena, which he filed on March 25, 2019, comes too late. Williams has known since June 2017 that Rogers Manufacturing, not Design Specialties, was the manufacturer of the trays in question. Dkt. 57. If he wanted to obtain discovery from Rogers Manufacturing, or if he wanted to pursue a claim against Rogers directly, he should have done so much sooner. Now that all of the federal claims in this lawsuit have been resolved, I will not permit this lawsuit to proceed further so that Williams can continue pursing his state law product liability claim. If Williams wants to pursue a state law product liability claims against Rogers Manufacturing, he may attempt to do so in state court.

ORDER

IT IS ORDERED that:

1. The motions for summary judgment filed by defendant Design Specialties, Inc., Dkt. 55 and Dkt. 101, and the state defendants, Dkt. 104, are GRANTED.

2. Plaintiff Roosevelt Williams's motion for court assistance in recruiting counsel, Dkt. 164, motion for assistance, Dkt. 170, and motion for issuance of subpoena, Dkt. 181, are DENIED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered March 27, 2019.

                                BY THE COURT:

                                /s/

                                _____
                                JAMES D. PETERSON
                                District Judge